900 F.2d 184
 58 USLW 2608, 20 Bankr.Ct.Dec. 603, Bankr.
L. Rep. P 73,324
 In re Warne EHRING, Debtor.
Warne EHRING, Appellant,
v.
WESTERN COMMUNITY MONEYCENTER; Franklin Tom, Commissioner
of Corporation, State of California as Liquidator
of Western Community Moneycenter, Appellees.
 No. 88-6564.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1990.
Decided April 3, 1990.
 
 Earle S. Hagan, Hagan & Hagan, Encino, Cal., for appellant.
 Patricia S. Brody, Jeffer, Mangels, Butler & Marmaro, San Francisco, Cal., for appellees.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before FARRIS, BOOCHEVER and NOONAN, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Ehring appeals the Bankruptcy Appellate Panel's decision that the purchase and resale of Ehring's house, by his secured creditor at a pre-petition, nonjudicial, noncollusive foreclosure sale was not a transfer for purposes of 11 U.S.C. Sec. 547(b) and thus not an avoidable preference, even though the creditor, from the resale, netted $110,000 more than the outstanding debt. 91 B.R. 897.
 
 
 2
 We affirm.
 
 ISSUES
 
 3
 This case raises an issue of first impression:
 
 
 4
 Did the purchase of real property security at a noncollusive, nonjudicial foreclosure sale by the secured creditor, within 90 days prior to the bankruptcy petition, constitute an avoidable preference under 11 U.S.C. Sec. 547(b)?
 
 
 5
 A. For purposes of calculating the 90 day preference period, what was the transfer and when did it occur?
 
 
 6
 B. If the transfer occurred within the 90 day period before the petition, did the creditor receive more than would have been received in a Chapter 7 liquidation?
 
 FACTS
 
 7
 The facts are uncontested. Ehring borrowed $145,000 from Coast Home Loans, Inc. and executed a promissory note in that amount to Coast. The Note was secured by a second deed of trust on real property dated March 2, 1983. Ehring was the Trustor and Coast was the Beneficiary. Coast assigned its trust deed to Western Community Moneycenter, which recorded on March 15, 1983.
 
 
 8
 Ehring defaulted on his note and Western caused a trustee's sale to be held pursuant to the power of sale provision in the deed of trust. A valid trustee's (nonjudicial foreclosure) sale was held on February 22, 1985 and Western purchased the property for the amount of Ehring's indebtedness in the second deed of trust--$199,746.41. Western recorded its purchase on March 21, 1985.
 
 
 9
 On April 18, 1985 Western entered into a purchase contract with the Millers to sell the property for $390,000. There was an escrow closing in July, 1985.
 
 
 10
 On May 21, 1985, Ehring filed a bankruptcy petition under Chapter 11. Both the foreclosure sale and the resale to the Millers occurred within 90 days of that petition. Ehring commenced an action against Western under section 547 of the Bankruptcy Code, seeking the return of $110,000 as an avoidable preference transfer. The $110,000 represents the difference between the $390,000 sale price to the Millers and the amount due under the first and second deeds of trust and associated costs of foreclosure. Ehring does not challenge the validity of the sale.
 
 
 11
 The bankruptcy court granted summary judgment for Western, finding no preference in either the trustee's sale or the resale to the Millers. The BAP affirmed and Ehring appeals.
 
 DISCUSSION
 
 12
 Avoidable Preferences under 11 U.S.C. Sec. 547(b).
 
 
 13
 Pursuant to Section 547 the trustee in bankruptcy may avoid transfers of property made by the debtor when a transfer meets certain requirements. "The purpose of this provision is to discourage creditors 'from racing to the courthouse to dismember the debtor during his slide into bankruptcy' and to 'facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.' " In re Vance, 721 F.2d 259 (9th Cir.1983) (quoting H.R.Rep. No. 95-595, 95th Cong., 1st Sess., reprinted in, 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6138).
 
 
 14
 The eligible transfers are referred to as "preferences" because they are deemed to be transfers that favor one creditor to the detriment of other creditors. Outside of the bankruptcy context such transfers are unobjectionable: The payments are properly earned and owed. But in bankruptcy, the concern is that a debtor, aware of imminent bankruptcy, will try to pay favored creditors which it may want or need to deal with in the future, at the expense of not paying other creditors. See T. Jackson, The Logic and Limits of Bankruptcy Law 123-25 (1986). When a transfer is avoided the recipient of the transfer must return the property or equivalent value to the debtor estate.
 
 Section 547(b) provides that
 
 15
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
 
 
 16
 (1) to or for the benefit of a creditor;
 
 
 17
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 
 
 18
 (3) made while the debtor was insolvent;
 
 
 19
 (4) made--
 
 
 20
 (A) on or within 90 days before the date of the filing of the petition; or
 
 
 21
 (B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and
 
 
 22
 (5) that enables such creditor to receive more than such creditor would receive if--
 
 
 23
 (A) the case were a case under chapter 7 of this title;
 
 
 24
 (B) the transfer had not been made; and
 
 
 25
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 26
 11 U.S.C. Sec. 547(b) (1988).
 
 
 27
 The first question is what constitutes a transfer for purposes of 547(b). If the relevant transfer occurred when Western recorded its deed of trust, then the transfer occurred before the 90 day period and the transfer is not avoidable. However, if a transfer occurred at the time of the foreclosure sale or at the recording of the foreclosure sale, then the transfer would be within the 90 day period and the court would have to determine if Western received more than it should have under 547(b)(5).
 
 
 28
 A. What is a "transfer"?
 
 
 29
 Whether a particular occurrence is a transfer for purposes of bankruptcy is a matter of federal characterization. McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70, 65 S.Ct. 405, 407-08, 89 L.Ed. 305 (1945). When a transfer occurs is defined by state law as directed by the Code. See id.; Evans v. Valley West Shopping Center, Inc., 567 F.2d 358, 360 (9th Cir.1978) (per curiam); 11 U.S.C. Sec. 547(e).
 
 
 30
 Western argues that a nonjudicial foreclosure sale is not a transfer, citing In re Madrid, 725 F.2d 1197 (9th Cir.1984). Madrid, on a fact pattern similar to this case but under Sec. 548 (fraudulent conveyances), held that there was not a transfer at the time of foreclosure; the only relevant transfer occurred when the creditor perfected its initial security interest (the recording of the deed of trust). We noted that, at the time, our decision was in accord with preferential transfer cases, whose central principle was
 
 
 31
 that the enforcement of a valid lien within four months of bankruptcy petition filing cannot be struck down as a preferential transfer where the lien was perfected outside the four-month reach back period. No matter what enforcement mechanism was employed, transfer for purposes of the preferential transfer section occurred at time of perfection of the lien, and not at time of enforcement.
 
 
 32
 725 F.2d at 1201 n. 2. Important to that decision was our refusal to read broadly the definition of "transfer" so as to include foreclosure.
 
 
 33
 However, the Code definition of "transfer" has since been amended to explicitly include "foreclosure of the debtor's equity of redemption." 11 U.S.C. Sec. 101(50).[1]
 
 
 34
 One judge contended in concurrence in Madrid that there is a second transfer at the foreclosure sale--a transfer of a debtor's interest in property. When the creditor records its security interest, its interest in the debtor's property is not complete. The debtor still has a right to possession, equitable title, and the right of redemption. When the foreclosure sale is completed, those interests are either transferred or extinguished. That Congress amended the definition of "transfer" to explicitly include the "foreclosure of the debtor's equity of redemption" supports this analysis. See In re Verna, 58 B.R. 246 (Bankr.C.D.Cal.1986) (foreclosure is a transfer for purposes of fraudulent conveyances (11 U.S.C. Sec. 548)); In re Christian, 48 B.R. 833 (D.Colo.1985); 5 Collier on Bankruptcy p 1300.12(32) (15th ed. 1989) ("This amendment [101(50) ] ... will make it difficult if not impossible to conclude, as had other courts before the amendment, that a foreclosure sale does not involve the transfer of any interest of the debtor."); 2 J. White & R. Summers, Uniform Commercial Code Sec. 25-7, at 449 (3rd ed. 1988) ("it is hard to escape the conclusion that there is a 'transfer of an interest of a debtor in property' at the time of the foreclosure").
 
 
 35
 Section 547(e) more specifically defines when a "transfer" occurs for purposes of measuring if it is within the 90 day period. Section 547(e)(2) states that there is a transfer made "(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time," or "(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days," or (C) just before the filing of the petition, if neither (A) or (B) is satisfied. Under California law, a transfer of real property, for purposes of 547(e), is perfected at the time of recording. See Cal.Civ.Code Secs. 1213-1215 (West 1982). Here, both the foreclosure sale and the recording of the trustee's deed occurred within 90 days of the petition.
 
 
 36
 B. If foreclosure entails a "transfer," is it for an antecedent debt?
 
 
 37
 Assuming the foreclosure qualifies as a transfer, we must then consider the antecedent debt requirement. When the debtor (involuntarily) transfers this limited interest, i.e. the right of redemption and possession, what does he get in return? Presumably, the outstanding debt will be retired (depending on the applicability of any deficiency judgment). That debt obligation is an antecedent debt, thus the requirement is met. But see In re Park North Partners, Ltd., 85 B.R. 916, 918 (Bankr.N.D.Ga.1988). Professors White and Summers agree with this analysis, rejecting as metaphysical the argument that "the abolition of the mortgage [is] a giving of present value to the debtor." 2 J. White & R. Summers, Uniform Commercial Code Sec. 25-7, at 450. They rightly point out that the foreclosure sale does not always even wipe out the mortgage.
 
 
 38
 C. The creditor benefited and the debtor was insolvent.
 
 
 39
 As a result of the foreclosure the creditor is paid some or all of the money it is due or gains possession of the collateral, satisfying section 547(b)(1). Section 547(f) creates a presumption, unrebutted in this case, that the debtor is insolvent during the 90 days prior to filing its petition. Section 547(b)(3) is satisfied as well.
 
 
 40
 D. Did the creditor receive more than it would have in Chapter 7 liquidation?
 
 
 41
 The final requirement that must be met for there to be a "preference" is that the creditor "received more" than it would have under Chapter 7 liquidation and distribution. This means that we must look at what the debtor transfers to the creditor when the creditor forecloses. This task is made more difficult by the fact that the Code does not say what "more" the creditor should not receive. In one hand, at the end of the foreclosure sale the creditor appears to have a piece of property. In the other hand, at the end of a Chapter 7 liquidation it would have money in satisfaction of its claim, to the extent of its security. How do we decide if the property is "more" than the money?
 
 
 42
 If the petition had been filed before the foreclosure sale was complete, the automatic stay (11 U.S.C. Sec. 362) would have prevented the sale. The creditor might have been able to lift the stay or might have had to wait for the trustee to liquidate the collateral. To the extent that the creditor is secured, it would receive 100% of its claim in dollar value--$199,746.41. The property appears to be worth $390,000 because the creditor sold it at that price a short time later, and it is well recognized that for various reasons foreclosure sales (and liquidation sales) do not bring the same value as a non-distress (fair market) sale.[2] Because the creditor appears to have received value greater than the debt that was secured, it could be argued that the creditor has received "more" from the foreclosure than it would have under Chapter 7 liquidation.
 
 
 43
 This analysis, however, fails to consider the reality of the transaction. If the creditor received "more" it is only because the creditor elected to purchase the property at the foreclosure sale rather than simply accepting the receipts of a sale to a third party. Had the third party outbid the creditor, there could be no preference because the price paid would not have been transferred for an antecedent debt. Since section 547 does not reach a third-party purchaser, it is difficult to see why the existence of a preference should turn on the status of the purchaser as a creditor. If the sale was defective or the purchaser otherwise took unfair advantage of the debtor, the transfer may be voided under section 548, regardless of whether the purchaser was the creditor or a third party. We see no reason to construe section 547 to permit avoidance of an otherwise properly conducted sale based solely on the creditor being the highest bidder.
 
 
 44
 Furthermore, a close analysis of a foreclosure proceeding supports treating the creditor the same as the third-party buyer. Foreclosure is not a unitary event, but in fact two separate legal events. First, the creditor must exert its power or right to foreclose--to force the sale of the property. The creditor has no obligation to buy, let alone, bid at the sale. Moreover, the creditor in purchasing the property at the foreclosure sale assumes the risk of not being able to dispose of it for the amount of the debt. The sale is a separate, second transaction, the receipts of which will be used to satisfy the creditor.
 
 
 45
 A preference exists only when the creditor has received more under the foreclosure than it would have under Chapter 7 liquidation. There is nothing in the statute that prohibits the creditor from purchasing the property in a liquidation sale--just as at foreclosure. In fact, section 547(b)(5) likely presumes a liquidation sale similar to the foreclosure sale forced by the mortgagee. See 2 J. White & R. Summers, Uniform Commercial Code Sec. 25-7, at 450. We conclude therefore that a creditor who purchases at a regularly conducted foreclosure sale has not received more than it would have under a Chapter 7 liquidation sale.
 
 CONCLUSION
 
 46
 Although we find that there was a transfer at the nonjudicial foreclosure sale, the creditor did not receive more than it would have under Chapter 7. The requirements of 11 U.S.C. Sec. 547(b) are not met. There is not an avoidable preference.
 
 
 47
 AFFIRMED.
 
 
 
 [1]
 Equity of redemption is the right of the mortgagor to redeem his property after defaulting in the payment of the mortgage debt, by subsequently paying all costs and interest, in addition to the mortgage debt to the mortgagee. The right is extinguished by actual foreclosure. It tends to be more applicable in title jurisdictions than lien jurisdictions, because with title, redemption actually brings title back to the mortgagor. Equity of redemption has been held to be an interest in real property and, as such, subject to ordinary rules of conveyancing. S. Gifis, Law Dictionary 159 (2d ed. 1984)
 California provides, by statute, essentially the same right under both a deed of trust and a mortgage, for either a non-judicial (power of sale) foreclosure sale, Cal.Civ.Code Sec. 2924c (West Supp.1990) or a judicial foreclosure sale, Cal.Civ.Pro.Code Secs. 726(e), 729.010-.080 (West Supp.1990).
 
 
 [2]
 Distress sales are rushed, poorly advertised, done on a cash, not credit, basis, do not allow buyers to examine the property well, and may entail potential future litigation. All these factors reduce the potential field of buyers, reducing the price it will command