In re Joseph PULCINI and Suzanne Pulcini, Debtors.

The Chase Manhattan Bank, as Trustee of IMC Home Equity Trust 1997–6 Under the Pooling and Servicing Agreement Dated as of October 1, 1997, by Citifinancial Mortgage Company, as Authorized Servicing Agent, Movant,

v.

Joseph and Suzanne Pulcini, and Norma Hildenbrand, Trustee, Respondents.

Bankruptcy No. 00–30060–BM.
Motion No. 01–0665M.

United States Bankruptcy Court, W.D. Pennsylvania.

May 7, 2001.

Gary A. Gaertner, Grenen & Birsic, P.C., Pittsburgh, PA, for Movant.

Norma Hildenbrand, Pittsburgh, PA, Chapter 7 Trustee.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

The Chase Manhattan Bank (hereinafter "CMB"), has brought a motion pursuant to 11 U.S.C. § 362(d) for relief from the automatic stay for cause so that it may receive and record a sheriff's deed to real property previously owned by debtors against which it had a lien. Movant ultimately purchased said realty at a sheriff's sale prior to the commencement of this bankruptcy case. It also seeks relief from the automatic stay so that it may bring an ejectment action against debtors in state court.

Although debtors have not objected to the motion, the chapter 7 trustee has responded to the request for relief from stay.

She maintains that relief from stay should not be granted primarily because any transfer to CMB with respect to the property that has occurred is avoidable under § 549(a) and/or § 547(b) of the Bankruptcy Code.

We will grant CMB's motion for relief from the automatic stay for reasons articulated below.

### - FACTS -

On September 26, 1997, debtors executed and delivered a promissory note in favor of Alternative Lending Mortgage Corporation in the principal amount of $71,500.00. They also executed and delivered a mortgage against real property located at 9216 Douglas Fir Drive, Pittsburgh, Pennsylvania (hereinafter "the property"). The note and mortgage eventually were assigned to CMB.

CMB initiated a foreclosure in state court on May 2, 2000, after debtors had defaulted on their obligations arising under the note. A default judgment in favor of CMB was entered on June 13, 2000.

On August 31, 2000, before a scheduled sheriff's sale could take place, debtors filed a voluntary joint chapter 7 petition, thereby staying the sale. The case was converted to a chapter 13 proceeding on September 28, 2000, and ultimately was dismissed on November 7, 2000, when debtors failed to complete the required schedules.

A sheriff's sale of the property, at which CMB purchased the property, was conducted on December 4, 2000. The amount of its bid was $2,699.97. On December 20, 2000, CMB paid another $1,966.97 to the sheriff to satisfy additional costs, including the fee for preparing the sheriff's deed, and to pay certain taxes.

On December 22, 2000, before a sheriff's deed to the property could be prepared and delivered to CMB, debtors filed the present voluntary joint chapter 7 case. A chapter 7 trustee was appointed shortly thereafter.

Although CMB purchased the property on December 4, 2000 Debtors continue to reside in it without paying any rent.

Notice of the commencement of the present bankruptcy case was filed with the Prothonotary of the Court of Common Pleas of Allegheny County on January 24, 2001. It also was served upon the sheriff at or about that time.

On February 28, 2001, CMB brought the present motion for relief from the automatic stay to permit it to receive and record the sheriff's deed to the property and to initiate an ejectment action against debtors in state court.

The docket in the foreclosure action indicates that a representative of the sheriff appeared before the Prothonotary on February 13, 2001, and acknowledged the issuance of a deed to the property to CMB.

### - DISCUSSION -

A bankruptcy case is commenced with the filing of a bankruptcy petition. 11 U.S.C. § 301. A bankruptcy estate is created as of that time. 11 U.S.C. § 541(a).

Section 541 of the Bankruptcy Code was intended to sweep broadly. Property of all kinds, whether tangible or intangible, as well as all other forms of property specified in § 70(a) of the former Bankruptcy Act are included. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2314 n. 9, 76 L.Ed.2d 515 (1983).

While federal bankruptcy law determines what types of property are included in the bankruptcy estate, state law determines what interest, if any, a debtor has in property. *In re O'Dowd*, 233 F.3d

197, 202 (3d Cir.2000). Unless some federal interest dictates otherwise, property interests should not be analyzed differently merely because one is involved in a bankruptcy proceeding. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Any legal or equitable interest in property that a debtor has as of the commencement of a bankruptcy case is included in the debtor's bankruptcy estate. 11 U.S.C. § 541(a)(1). Property in which a debtor holds only legal title but not an equitable interest as of the commencement of the bankruptcy case is property of the estate for purposes of § 541(a)(1) only to the extent of debtor's legal title to the property. The equitable interest does not become property of the bankruptcy estate. 11 U.S.C. § 541(d). The legal or equitable interests of the bankruptcy estate in property can "rise no higher than those of the debtor". *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir.1993).

We previously noted that the sheriff's sale at which CMB purchased the property was completed prior to the filing of the bankruptcy petition in the present case. In addition, CMB had fully complied with all the terms of the sale before the case was commenced. Acknowledgment and delivery of the sheriff's deed, however, did not occur until after the commencement of the case.

■ Under Pennsylvania law, the purchaser of real property at a sheriff's sale acquires a vested equitable interest in the property "at the fall of the auctioneer's hammer". *Butler v. Lomas and Nettleton Company*, 862 F.2d 1015, 1019 (3d Cir. 1988); *Pennsylvania Company for Insurances on Lives and Granting Annuities v. Broad Street Hospital*, 354 Pa. 123, 128, 47 A.2d 281, 283 (1946). In spite of its relative antiquity, this principle retains its vitality as a statement of the law in Pennsylvania.

■ Applying this principle to the facts of the present case, it follows that CMB, not debtors, had the equitable interest in the property "when the hammer fell" at the sheriff's sale on December 4, 2000, nearly three weeks *before* commencement of the present bankruptcy case.

The filing of a bankruptcy petition in accordance with § 301 of the Bankruptcy Code operates as a stay, applicable to all entities, of certain types of acts specified at 11 U.S.C. § 362(a). Included among the acts so stayed are the commencement or continuation of a judicial, administrative, or other action of proceeding against the debtor that was or could have been commenced before the filing of the bankruptcy petition or to recover a claim that arose prior thereto. 11 U.S.C. § 362(a)(1).

■ The automatic stay serves a twofold purpose. It protects a debtor by stopping all collection efforts, harassment, or foreclosure actions, thereby relieving the debtor of financial pressures that drove debtor into bankruptcy in the first place. It also prevents any single creditor from acting unilaterally in furtherance of its own self-interest to the detriment of debtor's other creditors. *Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir.1995).

■ Unless relief from stay is granted, the automatic stay remains in effect until the bankruptcy case is dismissed or closed, or until a discharge is granted or denied, whichever occurs first. 11 U.S.C. § 362(c). A party in interest may obtain relief from the automatic stay upon motion and after a hearing by showing, among other things, cause for such relief. 11 U.S.C. § 362(d)(1).

We previously determined that CMB had an equitable interest in the property as of the filing of the bankruptcy petition

in this case. The chapter 7 trustee does not contest this proposition. What remains to be determined is whether CMB also had legal title to the property by then.

Although Pennsylvania law on the matter is not pellucid, there are indications that CMB also had legal title to the property prior to the filing of the bankruptcy petition on December 22, 2000.

Once the sheriff accepts a bid at a sheriff's sale, the purchaser acquires a right to a deed upon compliance with the terms of the sale and assumes an obligation to comply with the terms. *Pennsylvania Companies for Insurances*, 354 Pa. at 127, 47 A.2d at 282. The purchaser's equitable interest becomes a "complete title" *upon complying with the terms of the sale.* The purchaser acquires an "inchoate title" in the real estate. *Id.*, 354 Pa. at 132, 47 A.2d at 285. The subsequently acknowledged and delivered sheriff's deed is merely *evidence* of the purchaser's title; it *relates back to and takes effect as of the sale date. Id.*

Applying these precepts to the facts of this case, it appears that CMB had legal title to the property two days before the commencement of this bankruptcy case, by which time it had fully complied with all the terms of the sheriff's sale. If this is correct, it follows that debtors had neither an equitable interest nor legal title to the property as of the commencement of their bankruptcy case and that it consequently was not included in their bankruptcy estate by virtue of § 541(a)(1) of the Bankruptcy Code.

Furthermore, the subsequent post-petition acknowledgment and delivery of the sheriff's deed to CMB was *not* a violation of the automatic stay, in particular § 362(a)(1). The acknowledgment and delivery of the deed to CMB were at most ministerial acts. The sheriff's acts in this

regard arose out of laws and/or judicial decrees with such "crystalline clarity" that nothing was left to the sheriff's discretion or judgment. *See Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 974 (1st Cir.1997). Because CMB had fully complied with the terms of sale at which it had purchased the property, the sheriff had no discretion and no judgment to exercise before acknowledging and delivering the deed to CMB. Ministerial acts, even if undertaken post-petition within the context of a judicial or other court proceeding do not violate the automatic stay, in particular § 362(a)(1). *McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1080 (9th Cir.2000); *In re Soares*, 107 F.3d at 973–74; *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994).

We recognize that at least two bankruptcy courts have held that, under Pennsylvania law, legal title to property purchased at a sheriff's sale does not pass to the purchaser until acknowledgment and delivery of the sheriff's deed occurs. *In re Rouse*, 48 B.R. 236, 240 (Bankr.E.D.Pa. 1985); *Russell v Equibank (Matter of Russell)*, 8 B.R. 342, 345 (Bankr.W.D.Pa. 1980). As authority for this proposition, *In re Rouse* cites to *Russell*, which in turn cites to *Pennsylvania Companies for Insurances*, 354 Pa. at 129, 47 A.2d at 281, as authority for the proposition. We disagree. Our review of *Pennsylvania Companies for Insurances* indicates no support for this proposition.

The outcome of this matter would be the same even if debtors still had legal title to the property as of the commencement of their bankruptcy case. When a purchaser acquires an equitable interest in real property at a sheriff's sale but legal title remains with a debtor when the debtor files a bankruptcy petition, cause exists pursuant to § 362(d) of the Bankruptcy

Code to lift the automatic stay to permit the purchaser to obtain legal title. *Bundy v. Donovan (In re Donovan),* 183 B.R. 700, 702 (Bankr.W.D.Pa.1995); *In re Golden,* 190 B.R. 52, 58 (Bankr.W.D.Pa.1995).

 Even if post-petition acknowledgment and delivery of the sheriff's deed had violated the automatic stay, this would pose no obstacle to granting CMB relief from stay on a *nunc pro tunc* basis. As a general matter, acts performed in violation of the automatic stay are void *ab initio. Maritime Electric Company, Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206–07 (3d Cir.1991). This general principle is not, however, without exception. Subsection 362(d) of the Bankruptcy Code authorizes the bankruptcy court to annul the automatic stay and to grant relief from stay retroactively. Annulment of the automatic stay effectively makes acts committed in violation of the automatic stay voidable rather than void *ab initio. In re Siciliano,* 13 F.3d 748, 750–51 (3d Cir. 1994).

We conclude in light of the following that, to the extent relief from stay is required under the above circumstances, CMB is entitled to relief from stay to permit it to take whatever steps are required for it to perfect its title to the property.

 The matter does not end there. Cause pursuant to § 362(d) also exists for granting CMB relief from the automatic stay to permit it to bring an action in state court to have debtors evicted from the property. Debtors, who do not have an equitable interest in the property and who either already do not have legal title or shortly will not have legal title thereto, are occupying the premises without paying any rent. We are aware of no good reason why they should be allowed to remain on the property under such circumstances.

The chapter 7 trustee asserts that relief from stay should not be granted to permit CMB to perfect its legal title to the property because she may, pursuant to § 549(a) of the Bankruptcy Code, avoid the post-petition transfer of legal title to CMB that occurred when the sheriff's deed was acknowledged and delivered to CMB. She further asserts that relief from stay should not be granted because the pre-petition transfer to CMB which occurred when "the hammer fell" at the sheriff's sale is avoidable as a preference in accordance with § 547(b) of the Bankruptcy Code.

Neither of these assertions has merit. They do not provide a basis for denying the request of CMB for relief from stay.

 Section 549 of the Bankruptcy Code provides in relevant part as follows:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2) . . . .

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

The chapter 7 trustee cannot prevail under this provision for numerous reasons.

To begin with, we have determined that the transfers of the equitable interest in the property and of the legal title thereto occurred *before,* not after, the commencement of this bankruptcy case. Subsection 549(a)(1), therefore, is not satisfied in this instance.

 Moreover, even if the transfer of legal title to the property had occurred after the commencement of this bankruptcy case, we *authorized* the transfer after determining that cause existed for annul-

ling the automatic stay. As a consequence, § 549(a)(2)(B) also is not satisfied in this instance

■ Section 547 of the bankruptcy Code provides in relevant part as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the filing of the petition . . . ;

(5) that enables the creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The chapter 7 trustee maintains that CMB will "receive more" if the transfer arising out of the sheriff's sale is left undisturbed than it would receive if the chapter 7 trustee sold the property in this court and then made distribution to CMB in accordance with the provisions of chapter 7 of the Bankruptcy Code. *See* § 547(b)(5).

According to the chapter 7 trustee, debtors' equity in the property exceeds the amount of CMB's mortgage lien by nearly

$43,000.00. After debtors' allowed exemptions in the property, the amount of CMB's lien against the property, and anticipated costs of selling the property are paid, the chapter 7 trustee maintains, approximately $10,000.00 would remain for distribution to other creditors if the transfer to CMB as a result of the sheriff's sale is avoided as a preference.

This argument is without merit even if we assume that the chapter 7 trustee's numbers are accurate.

In a case that appears to be on point, one appellate court has concluded that § 547(b) does not apply when a creditor with a valid mortgage against real property is the highest bidder and purchases the property at a regularly-conducted, non-collusive sheriff's sale.[1] *Ehring v. Western Community Moneycenter (In re Ehring),* 900 F.2d 184, 188–89 (9th Cir.1990).

Had a third party outbid the creditor at the foreclosure sale and purchased the property, the *Ehring* court observed, there would be no preference. *Ehring,* 900 F.2d at 188. From this the court inferred that § 547(b) does not apply where the highest bidder happened to be the creditor who initiated the foreclosure sale. *Ehring,* 900 F.2d at 188–89.

The basis for this inference is far from obvious. *Ehring* apparently rests on a conceptual distinction drawn between a creditor *qua* creditor and a creditor *qua* purchaser. Relying on such a distinction, the *Ehring* court concluded that § 547(b) did not apply as a matter of law because, for purposes of § 547(b)(5), the creditor must receive "more" *qua* creditor. Where a creditor purchases the property at a foreclosure sale and then sells it for more

---

1. As far as we are able to determine, the chapter 7 trustee does not allege that the sheriff's sale at which CMB purchased debtors' property was irregular or collusive in any way.

than the amount of the debt owed to it, the creditor received more *qua* purchaser, not *qua* creditor. *See Newman v. FIBSA Forwarding, Inc. (In re FIBSA Forwarding, Inc.),* 230 B.R. 334, 338–39 (Bankr. S.D.Tex.1999).

Such reasoning appears to be nothing more than a contrivance that was designed to support the court's "gut feeling" that § 547(b) should not apply where a creditor who purchases property against which it has a lien at a regularly-conducted, non-collusive sheriff's sale ultimately sells the property to a third party for an amount considerably in excess of the amount of its lien.

In *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), the Supreme Court considered whether, as a matter of law, the purchase price realized in a foreclosure sale of property owned by a debtor conducted in accordance with applicable state law qualified, as a matter of law, as "reasonably equivalent value" for purposes of § 548(a)(1)(B) of the Bankruptcy Code. *BFP,* 511 U.S. at 545, 114 S.Ct. at 1765. The Supreme Court refused to read the phrase to require either "fair market value" or "fair foreclosure price". It instead concluded that, if all applicable state foreclosure requirements are met, the price obtained at the foreclosure sale constitutes, as a matter of law, "reasonably equivalent value" for purposes of § 548(a)(1)(B). *BFP,* 511 U.S. at 545, 114 S.Ct. at 1765.

Although *BFP* dealt with § 548(a), not § 547(b), we believe that the rationale of *BFP* applies to the present matter with equal force. It compels the conclusion that a pre-petition transfer of a debtor's interest in real property to a lien creditor who purchases the property at a regularly-conducted, non-collusive sheriff's sale and who then sells the property to a third party for an amount greater than the amount of its lien is not avoidable in accordance with § 547(b) as a preference. In particular, the lien creditor does *not* "receive more" for purposes of § 547(b)(5) than it would receive in a chapter 7 liquidation.

States have an important interest in enacting laws governing foreclosure of real property. The power to make title to real property secure is inherent to the nature of state government. *BFP,* 511 U.S. at 544, 114 S.Ct. at 1764–65. What is at stake is the essential sovereign interest in the security and stability of title to land. *BFP,* 511 U.S. at 545 n. 8, 114 S.Ct. at 1765 n. 8.

Congress unquestionably has power under the bankruptcy clause of the United States Constitution, Art. I, § 8, clause 4, to depart from or to displace state law in a bankruptcy context. *BFP,* 511 U.S. at 543, 114 S.Ct. at 1764. The intent of Congress to displace traditional state regulation, however, must be "clear and manifest". Otherwise, the Bankruptcy Code must be construed to adopt rather than displace preexisting state law. *BFP,* 511 U.S. at 544–45, 114 S.Ct. at 1765.

Applying these precepts to the present matter, we conclude that the chapter 7 trustee's position, if adopted, unquestionably would profoundly affect Pennsylvania's essential interest in making title to real property stable and secure. Title to real property purchased at a foreclosure sale "would be under a federally created cloud". *BFP,* 511 U.S. at 544, 114 S.Ct. at 1765.

Although the language of § 547(b) would, at first blush, seem to support the chapter 7 trustee's position that the sale of the property to CMB falls within the scope of § 547(b)(5) and is avoidable as a preference, we find no "clear and mani-

fest" indication that when it enacted § 547(b) Congress intended to override the long-standing law of Pennsylvania concerning title to real property.

We conclude in light of the foregoing that neither § 547(b) nor § 549(a) is available to the chapter 7 trustee to avoid the transfer to CMB of the equitable interest in and the legal title to the property it purchased at the sheriff's sale it instigated. CMB is entitled to relief from stay to perfect its legal title to the property and to initiate ejectment proceedings against debtors in state court.