**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1650
_____

IN RE: FRANK J. HACKLER AND DAWN A.
STELZLE-HACKLER,

Debtors

FRANK J. HACKLER; DAWN A. STELZLE-HACKLER

v.

ARIANNA HOLDINGS COMPANY, LLC,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 3-17-cv-06589)
District Judge: Honorable Peter G. Sheridan
_____

Argued on March 12, 2019

Before: MCKEE, PORTER and ROTH, <u>Circuit Judges</u>

(Opinion filed: September 12, 2019)

Elliott J. Almanza                    (**ARGUED**)
Keith A. Bonchi
Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill
660 New Road
Suite 1-A
Northfield, NJ 08225

        Counsel for Appellant

Leonard C. Walczyk          (**ARGUED**)
Wasserman, Jurista & Stolz
110 Allen Road
Suite 304
Basking Ridge, NJ 07920

        Counsel for Appellee

Tara A. Twomey
National Association of Consumers Bankruptcy
1501 The Alameda
Suite 200
San Jose, CA 95126

        Counsel for Amicus Appellee

_____

OPINION
_____

ROTH, <u>Circuit Judge</u>

This case requires us to decide, as a matter of first impression, whether a transfer of real estate title conducted via New Jersey's tax foreclosure procedures may be voided as "preferential" under § 547(b) of the United States Bankruptcy Code.[1] Appellant Arianna Holding Company LLC purchased a tax lien on a piece of property owned by Frank J. Hackler and Dawn Stelzle-Hackler. Arianna eventually obtained title to the Hacklers' property via foreclosure proceedings. Shortly after Arianna obtained title, the Hacklers filed for bankruptcy and sought to void the transfer of the title as preferential. The Bankruptcy Court and the District Court ruled in favor of the Hacklers and voided the title transfer. Because the title transfer undisputedly meets § 547(b)'s requirements for avoidance and because the federalism concerns raised by Arianna cannot overcome the plain language of the Bankruptcy Code, we will affirm.

**I**

The Hacklers failed to pay property tax on a parcel in North Brunswick, New Jersey. On June 25, 2013, the township held a duly advertised tax sale—a public auction for the unpaid municipal lien on the property. While mortgage foreclosures involve bidding on the actual property, at New Jersey tax foreclosures the public bids only on the rate of interest on the unpaid taxes; the lowest bidder wins.[2] Accordingly, the redemption amount for a tax lien

---

[1] 11 U.S.C. § 547(b).
[2] N.J.S.A. 54:5-32.

3

certificate—the amount the property owner must pay to recover the lien and prevent foreclosure—is calculated from the accrued taxes plus interest, not from the value of the underlying property.[3] At the tax sale for the lien on the Hacklers' property, Phoenix Funding, Inc., bid the interest rate on the tax sale certificate down to 0% and paid a premium of $13,500 above the value of the lien. Phoenix paid the delinquent taxes as they became due and charged the state-allowed interest rate of 18% on the subsequent taxes.[4]

In New Jersey, tax sale foreclosures are "strict foreclosures."[5] If the property owner does not redeem the certificate by paying the lienholder the redemption amount (the original unpaid taxes and subsequent taxes plus 18%), the certificate holder may, after two years, file for a foreclosure judgment; that judgment vests title directly in the tax lien certificate holder. After waiting the required two-year period, and after sending a notice of intent to foreclose, Phoenix filed an uncontested tax foreclosure complaint. On May 9, 2016, Phoenix assigned the certificate to Arianna Holding Company, LLC, a real estate holding company. The Hacklers did not redeem the tax lien certificate, and on October 6, 2016, final judgment in the foreclosure was entered, vesting title to the Property in Arianna (the Transfer).

---

[3] N.J.S.A. 54:5-58; s*ee also In re Hackler*, 588 B.R. 394, 399 (D.N.J. 2018) (citing *In re Berley Assocs., Ltd.*, 492 B.R. 433, 439-40 (Bankr. D.N.J. 2013)).

[4] N.J.S.A. 54:4-67; *see also In re Hackler*, 571 B.R. 662, 663 (Bankr. D.N.J. 2017).

[5] N.J.S.A. 54:5-86; *see also Caput Mortuum, L.L.C. v. S&S Crown Servs.*, 841 A.2d 430, 438 (N.J. Super. Ct. App. Div. 2004).

4

On December 14, 2016, a little over two months after the Transfer, the Hacklers filed a Chapter 13 bankruptcy petition. The petition and schedules listed the value of the property at $335,000, which far exceeded the value of the liens against the property (Arianna filed a proof of claim for $42,561.21, and other liens totaled no more than $89,000). The Hacklers' Chapter 13 plan proposed to pay Arianna's claim in full.

The same day that they filed for bankruptcy, the Hacklers opened an adversary proceeding seeking to avoid the Transfer of the Property to Arianna as a preferential transfer under § 547(b) of the Bankruptcy Code and moved for summary judgment. Arianna cross-moved for summary judgment, arguing that voiding the Transfer would represent an impermissible incursion into the state's essential interests in preserving the validity of real estate title and collecting real estate taxes.

The Bankruptcy Court ruled for the Hacklers, voiding the Transfer and directing that title to the Property return to them. The Bankruptcy Court found that the Transfer met all the requirements of § 547(b) and held that Arianna's federalism concerns could not overcome the Code's clear statutory text. The District Court affirmed, and Arianna now appeals.

**II**[6]

**A**

It is well-established that a "'central policy' of the Bankruptcy Code is the '[e]quality of distribution among creditors.'"[7] In accordance with that policy, creditors of equal priority receive pro rata shares of the debtor's property. A critical feature of this system is the ability to avoid pre-petition property transfers that benefit some creditors over others.[8] The Code does so by allowing the unwinding of property transfers that meet certain requirements, thereby preventing some creditors from receiving windfalls at the expense of others. As is relevant to the instant petition, a property transfer may be voided as preferential under § 547 or as fraudulent under § 548. While both § 548 and § 547 permit the unwinding of certain property transfers, they serve

---

[6] The Bankruptcy Court exercised jurisdiction over the matter as a "core proceeding" under bankruptcy law. 28 U.S.C. §§ 157(a); 157(b)(2)(F); 1334(a). The District Court exercised jurisdiction over the appeal under 28 U.S.C. § 158(a)(1). We have appellate jurisdiction under 28 U.S.C. § 158(d)(1) and 28 U.S.C. § 1291. In a bankruptcy appeal, we exercise plenary review over the bankruptcy court's grant of summary judgment. *In re AE Liquidation, Inc.*, 866 F.3d 515, 522 (3d Cir. 2017). Arianna does not argue that the Transfer fails to meet any of the elements of § 547(b) and so this case presents no dispute of fact.

[7] *In re Net Pay Solutions, Inc.*, 822 F.3d 144, 150 (3d Cir. 2016) (quoting *Begier v. Comm'r*, 496 U.S. 53, 58 (1990)).

[8] *Id.* (discussing preferential transfers).

6

different purposes, use different statutory language, and require different analyses.

This case involves a preferential transfer under § 547(b) of the Bankruptcy Code. Under that provision, which prevents creditors from rushing to take assets before a debtor files for bankruptcy, the trustee may avoid any transfer:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.[9]

The Bankruptcy Court and the District Court found that the Transfer was voidable as preferential. Thus, they did

---

[9] 11 U.S.C. § 547(b).

not reach the question whether the Transfer was alternatively voidable as fraudulent under § 548.[10]

**B**

Our analysis begins with the statutory text.[11]  The parties do not dispute the meaning of § 547(b).  As explained above, a transfer may be voided as preferential if it (1) was made to or for the benefit of a creditor, (2) was made for an antecedent debt, (3) was made while the debtor was insolvent, (4) was made on or within 90 days before filing for bankruptcy, and (5) enabled the creditor to receive more than it would have received in a Chapter 7 liquidation proceeding.

Nor do the parties dispute the applicability of § 547(b) to the Transfer in this case.  The Transfer was made to the tax certificate holder, for a debt that arose before the Hacklers

---

[10] Under § 548, which prevents actual and constructive fraud, *see BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994) a transfer made within two years of filing for bankruptcy may be voided if the debtor (1) had "actual intent to hinder, delay, or defraud any entity to which the debtor" was indebted, or (2) "received less than a reasonably equivalent value in exchange for such transfer" and either was insolvent, expected to become insolvent, or was trying to benefit an "insider."  11 U.S.C. § 548(a)(1).  The term "insider" is defined at 11 U.S.C. § 101.

[11] *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) ("It is the cardinal canon of statutory interpretation that a court must begin with the statutory language . . . .").

petitioned for bankruptcy, while the Hacklers were insolvent,[12] and within 90 days of their petition; it bestowed a parcel worth $335,000 on a party that would have received $45,000 in a Chapter 7 proceeding. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[13] Unless there is ambiguity, we "cannot allow policy to guide our analysis."[14] Here, the statute is unambiguous. Applying its straightforward terms does not lead us to an absurd result. Thus, our reading of it ends there.[15]

In requesting that we look beyond the plain terms of the statute, Arianna raises two separate arguments, both sounding in principles of federalism. First, the company argues that a lawfully-conducted state tax foreclosure cannot constitute a voidable preference under § 547. Arianna relies in part on the Supreme Court's decision in *BFP v. Resolution*

---

[12] For the purposes of § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f).

[13] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (internal quotation marks omitted)).

[14] *Sea-Land Serv., Inc. v. Barry*, 41 F.3d 903, 910 (3d Cir. 1994).

[15] *In re Philadelphia Newspapers, LLC*, 599 F.3d at 304 ("When the words of a statute are unambiguous . . . judicial inquiry is complete." (internal quotation marks omitted)).

*Trust Corp.*,[16] which interpreted § 548 of the Bankruptcy Code and which, it claims, should also apply so that New Jersey tax sale foreclosures are exempted from avoidance under § 547. Second, Arianna argues that the avoidance of the Transfer violated the Tax Injunction Act.[17] As discussed below, we find the statute to be clear and its required outcome not absurd. But even giving full weight to Arianna's points, neither argument compels a different result. We address each in turn.

**i**

Arianna argues first that the tax foreclosure cannot constitute a voidable preference under § 547(b). The company relies chiefly on the Supreme Court's decision in *BFP v. Resolution Trust Corp.* In *BFP*, the question before the Court was "whether the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law" satisfied the requirement of § 548 that a property transfer be made in exchange for "a reasonably equivalent value," so that the transfer was protected from voidance.[18] The Court held that the amount received at the mortgage foreclosure sale constituted "reasonably equivalent value." Thus, the sale could not be voided under § 548.

*BFP* differs from the case before us in two crucial ways. First, the Court was interpreting the fraudulent transfer provision, § 548, not the preferential transfer provision. Second, the decision involved a mortgage foreclosure, not a

---

[16] 511 U.S. 531 (1994).

[17] 28 U.S.C. § 1341.

[18] 511 U.S. at 533 (quoting § 548(a)(2)).

tax foreclosure. These are not trivial distinctions. The *BFP* opinion is grounded in the text of § 548, in particular the term "reasonably equivalent value," which is not defined in the Code and appears nowhere else. For the Court, the fact that Congress "[went] out of its way to" replace the usual term "fair market value" with this "entirely novel" term indicated that "fair market value cannot—or at least cannot *always*—be the benchmark."[19] The Court buttressed its reading by considering how mortgage foreclosures work, and in particular, "that market value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value."[20] The Court recognized that a foreclosed home, sold at auction, cannot be expected to bring the price it would command if sold in a fair market after negotiation and mutual agreement. Congress's use of the term "reasonably equivalent value," therefore, could not have been intended to mean market value, and whatever consideration was received through the regularly-conducted sale was sufficient so that the sale could not be avoided under § 548.

The Court's decision in *BFP* is thus closely tied to both the language of § 548 and the mechanics of mortgage foreclosures. The Court even emphasized, in a footnote, that its "opinion . . . cover[ed] only mortgage foreclosures of real estate," because "[t]he considerations bearing upon other foreclosures and forced sales (*to satisfy tax liens, for example*) may be different."[21] This is such a case. As explained above, at New Jersey tax sales the public bids only

---

[19] *Id.* at 537.

[20] *Id.*

[21] *Id.* n.3 (emphasis added).

on the rate of interest on the unpaid taxes. The main conclusion of *BFP*—that the price reached via a foreclosure conducted according to state law should be considered to be the "reasonably equivalent value" of the property—is not pertinent here, because in New Jersey, the relationship between the winning bid and the value of the underlying property is not merely attenuated but nonexistent. Given that the term "reasonably equivalent value" does not appear in § 547(b), and in light of the divergent procedures and attendant considerations in tax foreclosure proceedings in New Jersey, we find *BFP* inapplicable to this case.[22]

Arianna urges a contrary result, claiming that *BFP* stands for the proposition that, absent a clear and manifest intent of Congress to displace an area traditionally regulated by the states, the Bankruptcy Code should not be construed to supersede state law. To be sure, the *BFP* Court carefully considered the potential infringement on the state. Given the "essential state interest" in protecting the stability of real estate titles, the Court found that without a clear signal from Congress, it could not read § 548—the meaning of which was disputed—in a way that would cause "[t]he title of every piece of realty purchased at foreclosure," a long-observed state remedy, to "be under a federally created cloud."[23] But at its core, Arianna's argument puts the cart before the horse: The problem before the Court was how to interpret the term "reasonably equivalent value," a term that does not appear in § 547(b). The Court did consider the implications to the

---

[22] We emphasize that our opinion is limited to New Jersey tax foreclosures conducted in accordance with state law.
[23] 511 U.S. at 544.

12

state's interests of voiding a mortgage foreclosure, but the case hinged on the meaning of the statute.

Our conclusion that *BFP* does not apply to New Jersey tax foreclosures voided as preferential does not conflict with binding precedent or out-of-Circuit caselaw. Some courts within our Circuit have extended *BFP* to mortgage foreclosures under § 547(b)—but mortgage foreclosures entail different considerations from tax sale foreclosures, as the *BFP* Court emphasized. For that reason, a case like *In re Pulcini*[24] is distinguishable. In *Pulcini*, the Western District of Pennsylvania Bankruptcy Court, finding no indication that § 547(b) was intended to override Pennsylvania real property law, applied *BFP* to a sheriff's sale and held that the sale was not avoidable.[25] We find this holding unpersuasive as applied to New Jersey tax sales.[26]

Decisions extending *BFP* to tax foreclosures under § 548 are likewise distinguishable. Not only does § 548 differ from § 547 in its requirements, but the circuit courts that have extended *BFP* to tax foreclosures under § 548 involved state

---

[24] 261 B.R. 836 (Bankr. W.D. Pa. 2001).

[25] 261 B.R. at 844.

[26] We note that other district and bankruptcy courts have declined to extend *BFP* to mortgage foreclosures under § 547(b). *E.g.*, *In re Andrews*, 262 B.R. 299 (Bankr. M.D. Pa. 2001); *Hampton v. Ontario County*, 588 B.R. 671, 677 (W.D.N.Y. 2018).

laws that subjected the property at issue to auction.[27]   The Tenth Circuit even noted in *In re Grandote Country Club Company, Ltd.* that "the decisive factor in determining whether a transfer pursuant to a tax sale constitutes 'reasonably equivalent value' [under § 548] is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure."[28]   Where the property was not subjected to public auction, courts have been less willing to extend *BFP* to tax foreclosures under § 548.[29]

Finally, our decision today does not introduce a conflict with state law.   There is no explicit statutory

---

[27] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1153 (9th Cir. 2016) (citing Cal. Rev. & Tax Code § 3691(a)(1)(A)); *In re Grandote Country Club Co.*, 252 F.3d 1146, 1152 (10th Cir. 2001) (citing Colo. Rev. Stat. §§ 39-11-101, 39-11-108).  *In re T.F. Stone Co.*, 72 F.3d 466 (5th Cir. 1995), similarly involved Oklahoma law, which provides for competitive bidding.  *See* Okla. Stat. Ann. § 3129.  In any event, *In re T.F. Stone Co.* is also distinguishable as a § 549(c) case.  72 F.3d at 470.

[28] 252 F.3d at 1152.

[29] *E.g.*, *In re Smith*, 811 F.3d 228, 238 (7th Cir. 2016) (as bidding at Illinois tax sales is limited to the penalty interest rate on the lien, not the value of the property, no correlation between the sale price and the value of the property and so *BFP* not applicable); *In re GGI Props., LLC*, 568 B.R. 231, 247, 254-55 (Bankr. D.N.J. 2017); *In re Varquez*, 502 B.R. 186, 193 (Bankr. D.N.J. 2013); *In re Berley Associates, Ltd.*, 492 B.R. at 440.  A notable exception is *In re McGrath*, 170 B.R. 78, 83 (Bankr. D.N.J. 1994), which applied *BFP* to a tax foreclosure sale under § 548.

conflict—the New Jersey fraudulent conveyance statute,[30] which exempts tax foreclosures,[31] does not address preferential transfers. Arianna's point that tax foreclosures generally cannot constitute voidable preferences under state law is also unavailing; the state preference statute requires an intent to prefer a certain creditor, unlike the Bankruptcy Code, so that comparing the two is unpersuasive.[32] More importantly, since Congress has plenary power over bankruptcy, New Jersey state law is not germane to this case.[33] And while a debtor's filing for bankruptcy may impose a cloud on the title of her foreclosed property, we believe such a result to be mandated by the Code.[34]

---

[30] *See* N.J.S.A. § 25:2-20 *et seq.*

[31] *See* N.J.S.A. § 54:5-87.

[32] *See* N.J.S.A. § 2A:19-3.

[33] U.S. Const. Art. I, § 8; *see also Barnhill v. Johnson*, 503 U.S. 393, 397 (1992) ("'What constitutes a transfer' . . . is a matter of federal law." (quoting *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369-70 (1945))).

[34] Arianna points out that so long as a debtor files for bankruptcy within the ninety-day preference period, she has another two years in which to file a claim voiding a transfer under § 547(b), resulting in a two year and ninety day cloud on title. However, as noted by the Bankruptcy Court for the District of New Jersey in *In re GGI Properties, LLC* when analyzing § 548, "it is highly unlikely that everyone whose home is foreclosed due to tax liens will stampede the bankruptcy court just to avoid the transfer—bankruptcy is a long, intrusive and expensive process, and the consequences for abusing the system when one is not eligible for relief are serious ones." 568 B.R. at 249 (internal quotation marks omitted).

15

In sum, Arianna's first argument—that the Transfer cannot be voided as preferential—is precluded by the plain language of the statute and the differences between the mortgage foreclosure at issue in *BFP* and the tax sale foreclosure here.

**ii**

Arianna next argues that voiding the Transfer as preferential violates the Tax Injunction Act. The Tax Injunction Act provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law" if a remedy exists in state court.[35] While the state has a "compelling interest"[36] in enforcing the collection of taxes, Arianna's argument is misguided.

Arianna faults the District Court for holding that voiding the Transfer "does not affect the Township of New Brunswick's ability to still collect taxes."[37] The District Court relied in part on our 1995 decision in *Simon v. Cebrick*, which held that preventing a private citizen from foreclosing did "not affect the governmental entity's ability to assess, levy, or collect any tax," because "upon the sale of the tax certificate, the tax obligation is satisfied."[38] As Arianna points out, the New Jersey Supreme Court has since clarified that "a property owner's tax delinquency survive[s] the sale of a tax certificate;" thus, "the certificate holder will hold a lien that is based on that delinquency."[39]

---

[35] 28 U.S.C. § 1341.

[36] *Adams v. Commissioner*, 170 F.3d 173, 176 (3d Cir. 1999).

[37] *In re Hackler*, 588 B.R. at 401.

[38] 53 F.3d 17, 22 (3d Cir. 1995).

[39] *In re Princeton Office Park*, 218 N.J. 52, 69 (2014).

We recognize that this guidance from the New Jersey Supreme Court undermines our reasoning in *Simon*. But we need not decide whether *Simon* remains good law because "[i]t is well established . . . that the Tax Injunction Act does not prevent a Bankruptcy Court from enforcing the provisions of the Bankruptcy Code that affect the collection of state taxes."[40] Arianna concedes that the specific powers of the Bankruptcy Code supersede the more general prohibitions of the Tax Injunction Act, but argues that no specific provision of the Bankruptcy Code permits courts to review and alter final judgments of tax foreclosure; thus, the Tax Injunction Act should govern. But we need not frame the question so narrowly. The Bankruptcy Code permits courts to unwind preferential transfers; that specific edict overrides the Tax Injunction Act.[41]

---

[40] *In re Hechinger Inv. Co. of Del.*, 335 F.3d 243, 247 n.1 (3d Cir. 2003).

[41] *See In re Ellett*, 254 F.3d 1135, 1149 (9th Cir. 2001) (the Tax Injunction Act does "not abridge the power specifically granted to the bankruptcy court to make such judgments as may be necessary for the enforcement of the provisions of the Bankruptcy Act." (quoting *Cal. State Bd. of Equalization v. Goggin*, 191 F.2d 726, 728 (9th Cir. 1951)); *Hampton*, 588 B.R. at 677-78 (county's interest in collecting property taxes must yield to Bankruptcy Code).

In sum, voiding the Transfer did not violate the Tax Injunction Act, and the District Court did not err in so holding.[42]

### III

The Transfer meets all the plain language requirements of the preferential transfer statute and was properly voided. Because the policy concerns Arianna raises cannot overcome the Court's duty to enforce the Bankruptcy Code, we will affirm.

---

[42] In briefing and at oral argument, Arianna argued that failing to apply *BFP* in this case could cause significant issues for municipalities that purchase tax liens at auction (often by default, when there is no other bidder). That is, the Bankruptcy Court could, in the interest of preserving the stability of title or at the request of a delinquent taxpayer, simply direct the municipal lienholder to pay the value of the underlying transferred property rather than return the property itself. *See* 11 U.S.C. § 550(a). The municipality would then be stuck with a potentially large bill for which it had not budgeted. Arianna suggests that Congress could not have contemplated § 547(b) to require this outcome, but in the absence of concrete evidence in the form of cases or legislative history, we will not speculate on such an eventuality.